## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | **CHAPTER 11** |
| **SULLIVAN STONE, INC.,** | ) | **CASE NO.  10-62815-MHM** |
| | ) | |
| | ) | |
| Debtor. | ) | |

_____

## PLAN OF REORGANIZATION FILED BY
## SULLIVAN STONE, INC.

**Dated this 2nd day of June, 2010**

_____

**Filed by:**

**Sullivan Stone, Inc., Debtor and Debtor in Possession.**

**Attorneys for Debtor and Debtor in Possession:**

**Leslie M. Pineyro**
**Leon S. Jones**
**Jones & Walden, LLC**
**21 Eighth Street, NE**
**Atlanta, Georgia  30309**
**(404) 564-9300**

COMES NOW, Sullivan Stone, Inc., debtor and debtor in possession in the above-captioned case (the "Debtor"), and, pursuant to sections 1121 and 1123 of title 11 of the United States Code (the "Bankruptcy Code") and the Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), proposes this Plan of Reorganization (the "Plan") for the resolution of the Claims against and Interests in the Debtor.  The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

## Article 1
## Introduction

1.1    <u>Disclosure Statement</u>.  Contemporaneously with the filing of the Plan, the Debtor filed and served a Disclosure Statement, as required by section 1125 of the Bankruptcy Code. The Disclosure Statement contains the history of the Debtor, financial information regarding the Debtor and its assets, and a solicitation of acceptances of this Plan.

1.2    <u>Property and Claims</u>.  This Plan deals with all property of the Debtor and provides for treatment of all Claims against and Interests in the Debtor and its property.

## Article 2
## Definitions and General Provisions

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 2.1 of this Plan.  Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

2.1    The following terms, when used in this Plan, shall have the following meaning:

2.1.1    "Administrative Claim" means a Claim for payment of an administrative expense entitled to priority under section 507(a)(1) of the Bankruptcy Code.

2.1.2    "Allowed Claim" shall mean a Claim or any portion thereof that is enforceable against the Debtor or enforceable against the property of the Debtor under sections 502 *or* 503 of the Bankruptcy Code.

2.1.3    "Allowed Secured Claim" shall mean the amount of the allowed Claim held by parties secured by property of the Debtor which is equal to the amount stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

2.1.4    "Allowed Unsecured Claim" shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

2.1.5    "Assets"  means, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of the Estate of the Debtor (including without limitation, all of the

assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter.

2.1.6 "Avoidance Action" means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.1.7 "Ballot" means each of the ballot forms that are distributed with the Disclosure Statement to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

2.1.8 "Bankruptcy Case" means the chapter 11 case initiated by the Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

2.1.9 "Bankruptcy Code" means title 11 of the United States Code.

2.1.10 "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

2.1.11 "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure.

2.1.12 "Business Day" means any day on which the commercial banks are required to be open for business in Atlanta, Georgia.

2.1.13 "Cash" means legal tender of the United States of America and equivalents thereof.

2.1.14 "Causes of Action" means all Avoidance Actions and any and all of the Debtor's or Reorganized Debtor's actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

2.1.15 "Chapter 11" shall mean chapter 11 of the Bankruptcy Code.

2.1.16 "Claim" means a claim against the Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

2.1.17 "Claims Objection Deadline" means the later of (i) 120 days after the Effective Date, or (ii) such other time as may be ordered by the Bankruptcy Court, as such dates

may be from time to time extended by the Bankruptcy Court without further notice to parties in interest.

2.1.18 "Classes" means a category of Claims or Interests described in this Plan.

2.1.19 "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.20 "Confirmation Hearing" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1128 of the Bankruptcy Code, as such hearing may be continued.

2.1.21 "Confirmation Order" means the order confirming this Plan pursuant to section 1129 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to the Debtor.

2.1.22 "Debtor" shall mean Sullivan Stone, Inc, the debtor in this Bankruptcy Case.

2.1.23 "Disallowed Claim" means a Claim or any portion thereof that (i) has been disallowed by a Final Order, (ii) is listed in any of the Debtor's Schedules at zero, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in the Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.1.24 "Disclosure Statement" means the Disclosure Statement for Plan of Reorganization filed by Debtor. as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such Disclosure Statement may be amended, modified or supplemented from time to time.

2.1.25 "Disputed Claim" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.1.26 "Distribution" means any distribution by the Debtor or Reorganized Debtor to a Holder of an Allowed Claim

2.1.27 "District Court" means the United States District Court for the Northern District of Georgia, Atlanta Division.

2.1.28 "Effective Date" means the date that is sixty (60) days after entry of a Confirmation Order.

2.1.29 "Equipment" shall mean the machinery, fixtures, equipment, and other supplies used by the Debtor in the operation of business.

4

2.1.30 "Estate" means, with regard to the Debtor, the estate that was created by the commencement by the Debtor of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

2.1.31 "Executory Contract or Unexpired Lease" means all executory contracts and unexpired leases to which the Debtor is a party.

2.1.32 "Filing Date" means February 1, 2010.

2.1.33 "Final Distribution" means the Distribution by the Debtor or Reorganized Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.1.34 "Final Distribution Date" means the Distribution Date on which the Final Distribution is made.

2.1.35 "Final Order" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely.  In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.1.36 "Holder" means a holder of a Claim or Interest, as applicable.

2.1.37 "Impaired" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

2.1.38 Intentionally Deleted

2.1.39 "Interests" means the equity interests in the Debtor.

2.1.40 "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

2.1.41 "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

2.1.42 "Plan" means this plan of reorganization as the same may hereafter be amended, supplemented, restated, or modified.

5

2.1.43   Intentionally Deleted.

2.1.44   "Priority Claim" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.1.45   "Priority Tax Claim" means a Claim against the Debtor that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

2.1.46   "Professional Compensation" means (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professional employed by the Debtor and the unsecured creditors' committee, if any, and (ii) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

2.1.47   "Record Date" means the date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan.   If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court, then the Record Date shall be the Confirmation Date.

2.1.48   "Record Holder" means the Holder of a Claim as of the Record Date.

2.1.49   "Released Parties" "Released Parties" means collectively the Debtor and the Reorganized Debtor.

2.1.50   "Reorganized Debtor" means the Debtor on or after the Effective Date.

2.1.51   "Retained Action" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which the Debtor or Debtor's Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by any the Debtor, (iii) claims and Causes of Action relating to strict enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of the Debtor's or the Reorganized Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's or the Reorganized Debtor's business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

2.1.52   "Schedules" means the Schedules of Assets and Liabilities the Debtor filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.1.53  "Secured Claim" means a Claim against the Debtor to the extent secured by a Lien on any property of the Debtor to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

2.1.54  "Subordinated Claim" means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

2.1.55  "Unimpaired" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.1.56  "Unsecured Claim" means any Claim against the Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.2     Time.  Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

## Article 3
## Classification of Claims and Interests; Impairment

3.1     Summary.  The categories of Claims and Interests set forth below classify all Claims against and Interests in the Debtor for all purposes of this Plan  A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. The treatment with respect to each Class of Claims and Interests provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

3.2     Class 1 shall consist of the BB&T Secured Claim.

3.3     Class 2 shall consist of the Unsecured Claims.

3.4     Class 3 shall consist of the Interest Claims.

## Article 4
## Treatment of Claims and Interests

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan) without prepayment penalty.

**If any Holder of a Claim or interest disputes the valuation of collateral as stated by Debtor herein and in the Plan and the parties cannot resolve the same, then the Holder of the applicable Claim secured by the applicable collateral must file a motion (the "Valuation Motion") requesting a hearing (the "Valuation Hearing") to determine the value of the applicable collateral. The Valuation Hearing shall be scheduled prior to or at the same time as any hearing to propose confirmation of the Plan. The deadline to file a motion requesting a Valuation Hearing shall be the same as any deadline to file an objection to confirmation of the Plan. If no Valuation Motion is filed, the valuation of collateral as stated herein and in the Plan shall control for purposes of this Plan and for purposes of collection action against any guarantors associated with the debt secured by such collateral.**

4.1 Class 1: <u>Internal Revenue Service Tax Claims</u>:

The amount of any Internal Revenue Service Tax Claim that is not otherwise due and payable on or prior to the Effective Date, and the right of the Internal Revenue Service, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Internal Revenue Service would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. Debtor reserves the right to pay any tax claim in full at any time.

6.1(a) <u>Priority Tax Claim of the Internal Revenue Service</u>: Class 1(a) consists of the priority tax claim of the Internal Revenue Service. On March 26, 2010, the Internal Revenue Service filed a revised proof of claim asserting a Priority Tax Claim in the amount of $20,487.02 ("Class 1(a) Internal Revenue Service Priority Tax Claim"). The Internal Revenue Service shall receive fifty-two (52) equally monthly payments of $430.00 commencing on the Effective Date and continuing by the 30th day of each month thereafter until the Internal Revenue Service's Class 1(a) Priority Tax Claim is paid in full. The Internal Revenue Service shall first apply such payments to taxes and then to interest and penalties thereon. The Internal Revenues Service's Class 1(a) Priority Tax Claim shall accrue interest on the outstanding balance of the Class 1(a) Priority Tax Claim from the Filing Date calculated at the fixed rate of 4% per annum or such lesser rate agreed to by the Internal Revenue Service.

The monthly payments to the Internal Revenue Service on its Class 1(a) Priority Tax Claim shall be $430.00.

6.1(b) <u>Secured Tax Claim of the Internal Revenue Service</u>: Class 1(b) shall consist of the secured tax claim of the Internal Revenue Service. On March 26, 2010, the Internal Revenue Service filed an amended proof of claim asserting a secured tax claim of $97,229.07 as evidenced by the Federal Tax Liens attached to the proof of claim. The Internal Revenue Service shall receive fifty-two(52) equally monthly payments of $2,040.00 commencing on the Effective Date and continuing by the 30th day of each month until the Internal Revenue Service's Class 1(b) Secured Tax Claim is paid in full. The Internal Revenue Service shall first apply such payments to taxes and then to interest

and penalties thereon. The Internal Revenues Service's Class 1(b) Secured Tax Claim shall accrue interest on the outstanding balance of the Class 1(b) Secured Tax Claim from the Filing Date calculated at the fixed rate of 4% per annum or such lesser rate agreed to by the Internal Revenue Service.

The monthly payments to the Internal Revenue Service on its Class 1(b) Secured Tax Claim shall be $2,040.00.

A failure by the Reorganized Debtor to make a payment to Internal Revenue Service pursuant to the terms of the Plan shall be an event of default. If the Reorganized Debtor fails to cure an event of default as to tax payments within twenty (20) days notice of default by the Internal Revenue Service to the Debtor and Debtor's counsel, then the Internal Revenue Service may (a) enforce the entire amount of its Class 1(a) and Class 1(b) tax claim; (b) exercise any and all rights and remedies it may have under applicable state law to enforce such claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Holder of the Class 1 Claim is impaired and entitled to vote to accept or reject the Plan. Nothing contained herein shall prohibit the Debtor from objecting to the Class 1 Claims for any reason.

4.2    Class 2: Rockdale County Tax Claims

The amount of any Rockdale County Tax Commissioner ("Rockdale County") Tax Claim that is not otherwise due and payable on or prior to the Effective Date, and the right of Rockdale County, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of Rockdale County would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. Debtor reserves the right to pay any tax claim in full at any time.

4.2(a)    Priority Tax Claim of Rockdale County:    Class 2(a) consists of the priority tax claim of Rockdale County. On February 18, 2010, Rockdale County filed a proof of claim asserting a Priority Tax Claim in the amount of $14,083.19 ("Class 2(a) Rockdale County Priority Tax Claim"). Rockdale County shall receive fifty-two (52) equally monthly payments of $296.00 commencing on the Effective Date and continuing by the 30th day of each month until the Rockdale County Class 2(a) Priority Tax Claim is paid in full. Rockdale County shall first apply such payments to personal property taxes and then to real estate taxes. Rockdale County's Class 2(a) Priority Tax Claim shall accrue simple interest on the outstanding balance of the Class 2(a) Priority Tax Claim from the Effective Date calculated at the fixed rate of 4% per annum or such lesser rate agreed to by Rockdale County. Rockdale County's Class 2 (a) Claim shall be reduced by any payments received by Rockdale County from any third party on the taxes constituting the Class 2(a) Claim, including but not limited to payment received from Athens First Bank. Any administrative expense claim of Rockdale County shall be paid as a Class 2 Claim. Any Class 2(a) tax claim associated with taxes due and owing on the Dogwood

Property (as defined herein) shall be satisfied at any foreclosure sale of the Dogwood Property.

The monthly payments to the Rockdale County on its Class 2(a) Priority Tax Claim shall be $296.00.

A failure by the Reorganized Debtor to make a payment to Rockdale County in accordance with Class 2 of the Plan shall be an event of default. If the Reorganized Debtor fails to cure an event of default as to Class 2 tax payments to Rockdale County within twenty (20) days notice of default by Rockdale County to the Debtor and Debtor's counsel, then Rockdale County may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have under applicable state law to enforce such claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Holder of the Class 2 Claim is impaired and entitled to vote to accept or reject the Plan. Nothing herein shall constitute an admission as to the nature, validity or amount of the claim. Debtor reserves the right to object to any and all claims for any reason.

4.3     Class 3:  Georgia Department of Labor Tax Claims.

The amount of any Georgia Department of Labor Tax Claim that is not otherwise due and payable on or prior to the Effective Date, and the right of the Georgia Department of Labor, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Georgia Department of Labor would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. Debtor reserves the right to pay any tax claim in full at any time.

6.3(a)  Priority Tax Claim of the Georgia Department of Labor:  Class 3(a) consists of the priority tax claim of the Georgia Department of Labor. On or about March 31, 2010, the Georgia Department of Labor filed a proof of claim asserting a Priority Tax Claim in the amount of $385.40 ("Class 3(a) Georgia Department of Labor Priority Tax Claim"). The Georgia Department of Labor shall receive $385.40 on the date that is sixty (60) days after Effective Date in satisfaction of its Class 3(a) claim.

6.3(b)  Secured Tax Claim of the Georgia Department of Labor:  Class 3(b) shall consist of the secured tax claim of the Georgia Department of Labor. On March 31, 2010, the Georgia Department of Labor filed an amended proof of claim asserting a secured tax claim of $240.49 as evidenced by the DOL FIFA No. 201003191 attached to the proof of claim. The Georgia Department of Labor shall receive $240.49 on the date that is sixty (60) days after the Effective Date in satisfaction of its Class 3(b) claim.

The Holder of the Class 3 Claim is impaired and entitled to vote to accept or reject the Plan. Nothing contained herein shall prohibit the Debtor from objecting to the Class 3 Claims for any reason.

4.4    Class 4: <u>Secured Claim of Athens First Bank</u>.  Class 4 consists of the Secured Claim of Athens First Bank.   On April 16, 2010, Athens First Bank filed proof of claim number 15 asserting a secured claim in the amount of $819,564.35 based on a promissory noted between Debtor and Athens First Bank and guaranteed by James Sullivan (the "Athens First Debt").  As evidenced by the Corrective Commercial Deed to Secured Debt and Security Agreement recorded on February 20, 2006 in Deed Book 3777 Page 35 in the public records of the Superior Court of Rockdale County, Georgia, Athens First Bank asserts a first priority security interest in the Dogwood Property.   Debtor values the Dogwood Property at $550,000.   Debtor shall surrender the Dogwood Property to Athens First Bank.  Athens First Bank shall be entitled to foreclosure on the Dogwood Property in accordance with applicable state law.   In the event Athens First Bank is entitled to a deficiency claim against Debtor under applicable state law, the Athens First Debt shall be reduced by the greater of the amount bid at the foreclosure sale of the Dogwood Property and $550,000.  In the event Athens First Bank is entitled to a deficiency claim against Debtor under applicable state law, Athens First Bank shall be entitled to assert a general unsecured claim for the amount of such deficiency claim, which shall be treated in accordance with Class 7 herein.

Holder of allowed Class 4 Claims are impaired and entitled to vote to accept or reject the Plan.

4.5    Class 5: <u>Secured Claim of GMAC</u>.  Class 5 consists of the secured claim of GMAC.  On February 10, 2010, GMAC filed a proof of claim number 1 in the amount of $19,607.82 (the "GMAC Claim").  The GMAC Claim is secured by a first priority security interest in Debtor's GMC C4500 pursuant to the first priority lien listed on the Georgia Certificate of Title attached to GMAC's proof of claim number 1.    The original Retail Installment Sale Contract was for the cash price of $70,674.57 and consisted of 48 payments commencing on October 2, 2006.  Pursuant to the *Consent Order on Relief from Stay* (Doc No. 46) (the "GMAC Order"), GMAC's Clam shall be paid in 36 equal monthly payments of $587.00 with simple interest accruing at annual rate of 4.9%, which is the per-petition contractual interest rate.  Pursuant to the GMAC Order, GMAC has been receiving such payment since May 2010 and any such payments previously received under the GMAC Order shall be applied towards the payments contemplated herein and the GMAC Claim. GMAC shall retain its lien in the GMC 4500 and said lien shall be valid and fully enforceable to the same extent, validity, and priority as existed on the Filing Date.

The Claim of the Class 5 Creditor is Impaired by the Plan and GMAC is entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

4.6    Class 6: <u>Convenience Class</u>.  Class 6 consists of open accounts with Debtor's trade vendors in an amount less than $5,500.00.  So as to preserve the ongoing business relationships with certain trade vendors and for administrative convenience, holders of general

unsecured claims less than $5,500 shall receive a one-time distribution twelve months following the Effective Date equivalent to 15% of each Holders allowed Class 6 general unsecured claim. A list of potential holders of Class 6 Claims and their proposed distribution is attached hereto as Exhibit "A":

The Claims of the Class 6 Creditors are Impaired and the Holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

4.7     Class 7: <u>General Unsecured Claims</u> owed pursuant to a contract or open account with Debtor or a deficiency balance on a secured claim ("Unsecured Claims"). Holders of Allowed Unsecured Claims shall receive five percent (5%) of each Holders applicable claims paid over five (5) years via equal quarterly distributions. The first distribution shall occur on or before December 31 of the year of the Effective Date and continue on or before the last day of each following quarter of the calendar year thereafter for a total of 20 quarterly distributions. Holders of Allowed Class 7 Claims may affirmatively elect on a ballot or other document filed with the Court prior to the deadline for filing ballots to have their claims reduced to $5,500.00 and reclassified and treated as a Class 6 Claim; provided, however, unless an affirmative Class 6 election is made the Claim will be treated as a Class 7 Claim. A list of potential Class 7 Claimants and prospective treatment as either a Class 6 or Class 7 Claim is set forth in Exhibit "B" hereto.

Nothing herein or in the exhibits hereto shall constitute an admission as to the nature, validity, or amount of any claim. Debtor reserves the right to object to any and all claims for any reason.

Holders of Allowed Class 7 Claims are Impaired and are entitled to vote to accept or reject the Plan.

4.8     Class 8: <u>Interest Claims</u>. Class 8 consists of the Interest Claims. If the Class 6 and 7 (Unsecured Creditors) vote to accept the Plan, as a class, then James Edward Sullivan shall retain 81% of the Reorganized Debtor and Billie Anne Sullivan shall retain 19% of the Reorganized Debtor.

If Classes 6 and 7 (the Impaired Unsecured Creditors) do not vote to accept the Plan, as a Class, then the following terms shall apply:

All pre-petition Interests shall be cancelled. James Edward Sullivan shall receive 100% of newly-issued stock in the Reorganized Debtor upon confirmation of the Plan in exchange for a promissory note in the amount $10,000 to be executed on the Effective Date. James Sullivan shall pay the promissory note in 5 annual equal payments with the first payment due on December 31 of the year following the Effective Date. Such payments shall be reflected on any post-confirmation reports filed by Debtor. The contribution by the principal of the Debtor shall constitute "new value." New value is the vehicle through which current equity holders purchase the equity interest of the Reorganized Debtor. Efforts of existing equity holders to purchase the equity interest of the reorganized debtor may be subject to competing bids in the market place under certain circumstances. Specifically, if Classes 6 and 7 of unsecured claims do not vote to

accept the Plan as set forth in this provision, then, in that event third parties may be able to purchase the equity interest of the reorganized debtor by appearing at the confirmation hearing and submitting a higher bid for the equity interests. Any purchaser of the shares shall be personally responsible and otherwise indemnify the Reorganized Debtor for payment of all priority and secured tax claims of the Reorganized Debtor. The requirement for and validity of any such bid shall be subject to the approval and review of the Court.

The holders of Class 8 Claims and are not entitled to vote to accept or reject the Plan.

## Article 5
## Treatment of Unclassified Claims

5.1    Summary.    Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on, or receiving Distributions under this Plan.  Holders of such Claims are not entitled to vote on this Plan.  All such Claims are instead treated separately in accordance with this Article V and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

With respect to potential Administrative Expense Claims, Debtor, pursuant to Court order, retained the law firm of Jones & Walden, LLC ("Firm") to serve as bankruptcy counsel. As set forth in the employment application and supporting documents, the Firm received a prepetition retainer in the amount of $16,778.00 and as of the date hereof, the fees and expenses incurred by the Firm have not exceeded the retainer.  Debtor is paying post-petition bills and does not expect any claims for unpaid post-petition goods and services.  Debtor will incur quarterly trustee fees which Debtor intends to pay when due.

5.2    Administrative Expense Claims.

5.2.1    Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (1) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder and the Debtor or the Reorganized Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by the Debtor in the ordinary course of business, or otherwise assumed by the Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Filing Date, will be paid or performed by the Reorganized Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

5.2.2    Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by the Debtor of its business in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Reorganized Debtor provides notice by mail or by publication, in a form and manner approved

by the Court, of the occurrence of the Effective Date.  At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for the Reorganized Debtor.  Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by the Debtor, the Estate, or the Reorganized Debtor.

5.2.3    Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within sixty (60) days after the Effective Date or by such other deadline as may be fixed by the Bankruptcy Court.

The Debtor's attorney fees during the remaining pendency of the case shall be paid as the same may be approved by the Bankruptcy Court.   The Plan provides that the Debtor may pay professional fees incurred after confirmation of the Plan without Court approval.  The Debtor shall pay all pre-confirmation fees of professionals as payment of the same is approved by the Court.

### Article 6
### Means for the Implementation of the Plan

6.1    Parties Responsible for Implementation of the Plan     Upon   confirmation, the Reorganized Debtor will be charged with administration of the Case.  The Reorganized Debtor will be authorized and empowered take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. The Reorganized Debtor will file all post-confirmation reports required by the United States Trustee's office.   The Reorganized Debtor will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation, the completion of the claims analysis and objection process, and following entry of Final Orders in all Bankruptcy Court litigation.

James Sullivan shall continue to manage the Reorganized Debtor.

6.2    Sources of Cash for Distribution.  The Reorganized Debtor will continue to exist after the Effective Date as a separate corporate entity, with all the powers of a corporation under applicable law in the jurisdiction in which it is incorporated or otherwise formed and pursuant to its certificate or articles of incorporation and by-laws or other organizational documents in effect prior to the Effective Date, except to the extent that such articles of incorporation and by-laws or other organizational documents are amended by this Plan, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.  The Debtor shall fund the Plan payments from Debtor's business operations.

6.3    Preservation of Causes of Action.  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtor will retain and may (but is not required to) enforce all Retained Actions.  After the Effective Date, the Reorganized Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such

Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. The Reorganized Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of the Reorganized Debtor (or any successors holding such rights of action. The failure of the Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by the Debtor or the Reorganized Debtor of such claim, right of action, suit, proceeding or other Retained Action, and the Reorganized Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtor specifically reserves the right to assert any and all claims against Highway 20 Shops, LLC its affiliates, assigns, successors in interest and their respective representatives, parent companies and subsidiaries, including, but not limited to, claims associated with violation of the non-compete clause in paragraph 66 of the Lease as contained in the Rider to the Lease.

6.4     <u>Effectuating Documents, Further Transactions</u>.  The Debtor and the Reorganized Debtor and their officers and designees are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

6.5     <u>Intentionally Deleted</u>

6.6     <u>Further Authorization</u>.  The Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as they deem necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

6.7     <u>Liabilities of the Reorganized Debtor.</u>  The Reorganized Debtor will not have any liabilities except those expressly assumed under the Plan. The Reorganized Debtor will be responsible for all Operational Expenses (defined as the normal and ordinary costs and expenses of operating the Debtor's business, including, without limitation, payroll and related taxes, insurance premiums, bank charges, maintenance costs, inventory costs, and all other costs of operations of any type arising after the Petition Date in connection with the operation of the Debtor's business, unless specifically excluded under the Plan) incurred by the Debtor in the ordinary course of business after the Petition Date, and those Operational Expenses will be paid in the ordinary course of business as they become due or as agreed upon by the  of the Operational Expense claim.

**Article 7**
**<u>Distributions</u>**

7.1     <u>Disbursing Agent</u>.  Unless otherwise provided for herein, all Distributions under this Plan shall be made by the Reorganized Debtor or its agent.

15

7.2     <u>Distributions of Cash</u>.  Any Distribution of Cash made by the Reorganized Debtor pursuant to this Plan shall, at the Reorganized Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

7.3     <u>No Interest on Claims or Interests</u>.  Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtor and a Holder, postpetition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

7.4     <u>Delivery of Distributions</u>.  The Distribution to a Holder of an Allowed Claim shall be made by the Reorganized Debtor (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to the Debtor or Reorganized Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Debtor or Reorganized Debtor have not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records.  If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Reorganized Debtor is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest.  Amounts in respect of undeliverable Distributions made in Chas shall be retained by the Reorganized Debtor until such Distributions are claimed.  All Cash Distributions returned to the Reorganized Debtor and not claimed within six (6) months of return shall be irrevocably retained by the Reorganized Debtor notwithstanding any federal or state escheat laws to the contrary.

7.5     <u>Distributions to Holders as of the Record Date</u>.  All Distributions on Allowed Claims shall be made to the Record Holders of such Claims.  As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim.  The Reorganized Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  The Reorganized Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

7.6     <u>Intentionally Deleted</u>

7.7     <u>Fractional Dollars</u>.  Any other provision of this Plan notwithstanding, the Reorganized Debtor shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

7.8     <u>Withholding Taxes</u>.  The Debtor or the Reorganized Debtor, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state,

16

local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

## Article 8
## Procedures for Treating and Resolving Disputed Claims

8.1    Objections to Claims.   The Reorganized Debtor shall be entitled to object to Claims, provided, however, that the Debtor and Reorganized Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan.   Any objections to Claims must be filed by the Claims Objection Deadline.

8.2    No Distributions Pending Allowance.   Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) the Claims Objection Deadline has passed and no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

8.3.    Resolution of Claims Objections.    On and after the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## Article 9
## Provision for Assumption of Unexpired
## Leases and Executory Contracts

9.1   Debtor is a party to a month to month equipment lease (the "Perimeter Lease") by and between Debtor and Perimeter Platforms.   As of the Filing Date, the Perimeter Lease was current.

Debtor intends to begin leasing real property to serve as Debtor's principal place of business located at 2626 Lithonia Industrial Boulevard, Lithonia GA 30058 from Corey O'Loughlin.   The lease will be a month to month lease for $2,000 per month.

Any unexpired leases or executory contracts which are not assumed herein or are the subject of a pending motion to assume as of the Effective Date shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date.   A proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after mailing of notice of the Confirmation Order.   Any claims which are not timely filed will be disallowed and discharged.

## Article 10
## Effect of Plan on Claims and Interests

10.1    Vesting of Debtor's Assets    Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (including Retained Actions, but

excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor that owned such property or interest in property as of the Filing Date, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan.  As of the Effective Date, Reorganized Debtor may operate its businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

10.2.  <u>Discharge of the Debtor</u>.  Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in Debtor, Reorganized Debtor or its Estate that arose prior to the Effective Date.

10.3  <u>Release by Debtor of Certain Parties</u>.       Except as otherwise specifically provided in the Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, as of the Effective Date, each Debtor, in its individual capacity and as a debtor in possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on or relating to, in whole or in part, Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims or Interests prior to or in the bankruptcy case, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring or the bankruptcy cases. Reorganized Debtor, and other potential representatives of the Estate shall be bound, to the same extent Debtor is bound, by all of the releases set forth above.

The Released Parties include (i) all officers, directors, employees, consultants, agents, financial advisors, attorneys and other representatives of Debtor who served in such capacity on or subsequent to the Filing Date, in each case in their capacity as such.

10.4  <u>Setoffs</u>.  The Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claim that the Debtor or the Reorganized Debtor may have against such Holder.

10.6  <u>Exculpation and Limitation of Liability</u>.  The Debtor, the Reorganized Debtor, and any of such parties' respective current and/or post-Filing Date and pre-Effective Date members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or

18

incur, and are hereby released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of its respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negation and filing o this Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their willful misconduct or grow negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities under this Plan.  No Holder of any Claim or Interest, or other party in interest, none of its respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out the Bankruptcy Case, the pursuit of confirmation of this Plan, the consummation of this Plan, the administration of this Plan or the property to be distributed under this Plan.

10.7    Effect of Confirmation.

10.7.1 Binding Effect.  On the Confirmation Date, the provisions of this Plan shall be binding on the Debtor, the Estate, all Holders of Claims against or Interests in the Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan.

10.7.2 Effect of Confirmation on Automatic Stay.  Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of § 362(a) of the Bankruptcy Code shall terminate.

10.7.3 Filing of Reports.  The Reorganized Debtor shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

10.7.4 Post-Effective Date Retention of Professionals.  Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtor will employ and pay professionals in their ordinary course of business.

**Article 11**
**Conditions Precedent**

11.1    Conditions to Confirmation.   The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Article 11.3 of this Plan.

11.1.1 The Bankruptcy Court shall have approved the Disclosure Statement with respect to this Plan in form and substance that is acceptable to the Debtor, in its sole and absolute discretion; and

19

11.1.2  The Confirmation Order shall have been signed by the Bankruptcy Court and entered on the docket of the Bankruptcy Cases.

11.2    <u>Conditions to the Effective Date</u>.  The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.3 of this Plan.

11.2.1  The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed;

11.2.2  All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan (including documents relating to the Exit Financing) shall be in form and substance that is acceptable to the Debtor in its reasonable discretion;

11.2.3  The Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

11.3    <u>Waiver of Conditions to Confirmation or Consummation</u>.  The conditions set forth in Article 11.1 and Article 11.2 of this Plan may be waived, in whole or in part, by the Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtor in its sole discretion (with the consent of the Committee, which consent shall not be unreasonably withheld) regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor)  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

**Article 12**
**Retention and Scope of Jurisdiction of the Bankruptcy Court**

12.1    <u>Retention of Jurisdiction</u>.  Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

12.1.1  To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

12.1.2  To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

12.1.3  To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of the Debtor;

12.1.4  To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by the Debtor and/or the Reorganized Debtor;

12.1.5  To hear and rule upon all applications for Professional Compensation;

12.1.6  To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

12.1.7  To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

12.1.8  To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

12.1.9  To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

12.1.10  To determine any suit or proceeding brought by the Debtor and/or the Reorganized Debtor to recover property under any provisions of the Bankruptcy Code;

12.1.11  To hear and determine any tax disputes concerning the Debtor and to determine and declare any tax effects under this Plan;

12.1.12  To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

12.1.13  To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

12.1.14  To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtor sold any of its assets during the Bankruptcy Case; and

12.1.15  To enter a final decree.

12.2    Alternative Jurisdiction.  In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

21

12.3   <u>Final Decree</u>.  The Bankruptcy Court may, upon application of the Reorganized Debtor after Designated Notice, at any time after "substantial consummation" of the Plan as defined in §1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest.  In such event, the Bankruptcy Court may enter an Order closing these cases pursuant to section 350 of the Bankruptcy Code, provided, however, that:  (a) the Reorganized Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes:  (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications the Debtor has brought or bring with regard to the liquidation of Assets and the prosecution of Causes of Action; (3) enforcing or interpreting this Plan or supervising its implementation; or (4) for other cause.

## Article 13
## Miscellaneous Provisions

13.1   <u>Modification of the Plan</u>.  The Debtor may modify this Plan pursuant to section 1127 of the Bankruptcy Code and as herein provided, to the extent applicable law permits.  The Debtor may modify this Plan in accordance with this paragraph, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.  In the event of any modification on or before confirmation, any votes to accept or reject this Plan shall be deemed to be votes to accept or reject this Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes.  The Debtor reserves the right in accordance with section 1127 of the Bankruptcy Code to modify this Plan at any time before the Confirmation Date.

13.2   <u>Allocation of Plan Distributions Between Principal and Interest</u>.  To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

13.3   <u>Applicable Law</u>.  Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

13.4   <u>Preparation of Estate Returns and Resolution of Tax Claims</u>.  The Debtor or Reorganized Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

13.5    <u>Headings</u>.  The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

13.6    <u>Revocation of Plan</u>.    The Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

13.7    <u>No Admissions; Objection to Claims</u>.  Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan.  The failure of the Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of the Debtor's rights to object to or reexamine such Claim in whole or in part.

13.8    <u>No Bar to Suits</u>.  Except as otherwise provided in Article X of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop the Debtor or Reorganized Debtor from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any disclosure statement filed by the Debtor in connection with this Plan or whether or not any payment was made or is made on account of any Claim.

13.9    <u>Exhibits/Schedules</u>.  All exhibits and schedules to this Plan, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

13.10    <u>Conflicts</u>.  In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

## Article 14
## <u>Tax Consequences</u>

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class.  Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes.  Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only.  No specific tax consequences to any Creditor or Holder of an Interest are represented, implied, or warranted.  Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation.

The proponent assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Interest. Holders of Claims or Interest are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.

The receipt by a Creditor or Interest Holder of cash or property in full or partial payment of its Claim or Interest may be a taxable event. To the extent that a portion of the cash or the fair market value of any property received is attributable to accrued and unpaid interest on a Claim being paid, a Creditor may recognize interest income. A Creditor or Interest Holder may also recognize gain or loss equal to the difference between the sum of the amount of cash received and the adjusted basis in the Claim or Interest for which the Holder receives amounts under the Plan. Such gain or loss may be treated as ordinary or capital depending upon whether the Claim or Interest is a capital asset.

Under the backup withholding rules of the Tax Code, a Holder of a Claim may be subject to backup withholding at the rate of thirty-one percent (31%) with respect to Distributions made pursuant to the Plan unless such Holder (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact, or (ii) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that it is not subject to backup withholding due to a failure to report all dividends and interest. Any amount so withheld will be credited against the Holder's federal income tax liability.

Respectfully submitted, this 2nd day of June, 2010.

SULLIVAN STONE, INC.
By: */s/ James E. Sullivan* _____
Name: James E. Sullivan_____
Title: Manager_____
Debtor and Debtor in Possession

JONES & WALDEN, LLC
*/s/ Leslie M. Pineyro*_____
Leon S. Jones
Georgia Bar No. 003980
Leslie M. Pineyro
Georgia Bar No. 969800
21 Eighth Street, NE
Atlanta, Georgia  30309
(404) 564-9300
Attorneys for Debtor and Debtor in Possession

24

Exhibit "A" Follows

| Holder | Scheduled Amount | Proof of Claim Amount | Used for Calculation | Distribution |
|---|---|---|---|---|
| A OK Rental | $370.40 | | $370.40 | $55.56 |
| A Daisy A Day | $911.89 | | $911.89 | $136.78 |
| Action Tired | $1,055.90 | | $1,055.90 | $158.39 |
| Airgas South | $629.62 | | $629.62 | $94.44 |
| American Hardware | $489.00 | | $489.00 | $73.35 |
| Architectural Concrete Co. | $2,384.00 | | $2,384.00 | $357.60 |
| Arrow Commercial Pest Mgmt | $808.00 | | $808.00 | $121.20 |
| Blue Cross Blue Shield | $3,165.60 | | $3,165.60 | $474.84 |
| Boral Bricks | $192.60 | | $192.60 | $28.89 |
| Brown & Watson | $904.42 | | $904.42 | $135.66 |
| Cintas Fire Protection | $80.50 | | $80.50 | $12.08 |
| CITI Bank Visa | $0.00 | $2,250.30 | $2,250.30 | $337.55 |
| citi Basnk VISA | $0.00 | $1,381.24 | $1,381.24 | $207.19 |
| CNA Surety | $100.00 | | $100.00 | $15.00 |
| Commquest Inc | $250.00 | | $250.00 | $37.50 |
| Cutting Edges Stone | $3,785.62 | $5,137.47 | $5,137.47 | $770.62 |
| D&J Auto Parts | $1,168.35 | $985.17 | $985.17 | $147.78 |
| Denis Putman Appraisal | $350.00 | | $350.00 | $52.50 |
| Five Star Stone | $109.64 | | $109.64 | $16.45 |
| Fleetcor Technologies | $0.00 | $5,069.29 | $5,069.29 | $760.39 |
| Gas Incorporated | $57.95 | | $57.95 | $8.69 |
| Geneva Granite Co | $3,025.00 | $1,940.78 | $1,940.78 | $291.12 |
| GMAC | 0 | $1,607.82 | $1,607.82 | $241.17 |
| Gregory Smith MD | $108.00 | | $108.00 | $16.20 |
| Hanson Aggregates | $84.40 | | $84.40 | $12.66 |
| Holloway & Smith CPA | $700.00 | | $700.00 | $105.00 |
| Home Depot | $1,835.76 | | $1,835.76 | $275.36 |
| Humphries Construction Product | $1,412.76 | | $1,412.76 | $211.91 |
| J&B Granite Works | $4,056.00 | | $4,056.00 | $608.40 |
| LDI Reprporinting Centers | $273.85 | | $273.85 | $41.08 |
| Maxwell & Hitchcock | $255.03 | | $255.03 | $38.25 |

| | | | | |
|---|---|---|---|---|
| Mid-Georgia Trucking | $935.52 | | $935.52 | $140.33 |
| Pavey & Smith | $67.50 | | $67.50 | $10.13 |
| Premier Platforms | $2,568.00 | | $2,568.00 | $385.20 |
| Reagin Granite Co. | $616.32 | | $616.32 | $92.45 |
| Rockdale Count Storm water Utilities | $52.08 | | $52.08 | $7.81 |
| Rockdale County Resources | $43.89 | | $43.89 | $6.58 |
| Rockland Florist | $108.61 | | $108.61 | $16.29 |
| Snapping Shoals EMC | $384.62 | $506.29 | $506.29 | $75.94 |
| Staples Credit Plan | $1,753.68 | | $1,753.68 | $263.05 |
| Steel Mart Inc | $606.31 | | $606.31 | $90.95 |
| Stone Sales | $970.56 | | $970.56 | $145.58 |
| W.T. Martin Tire Company | $208.76 | | $208.76 | $31.31 |
| Walton EMC | $804.41 | | $804.41 | $120.66 |
| | | | **$46,215.59** | **$6,932.34** |

26

Exhibit "B" Follows

| Holder | Scheduled Amount | Proof of Claim | Used for Calculation | Class 7 Total Distribution | Class 7 Quarterly Distribution | Class 6 Treatment |
|---|---|---|---|---|---|---|
| AT&T | $12,167.15 | | $12,167.15 | $608.36 | $30.42 | $825.00 |
| Aquatic Foundations & Install | $7,498.25 | $7,498.25 | $7,498.25 | $374.91 | $18.75 | $825.00 |
| Cameron Roberts | $12,014.93 | $24,810.25 | $24,810.25 | $1,240.51 | $62.03 | $825.00 |
| Castle Rock Quarries | $3,009.66 | $26,915.21 | $26,915.21 | $1,345.76 | $67.29 | $825.00 |
| Cherokee Brick | $55,466.53 | $39,123.08 | $39,123.08 | $1,956.15 | $97.81 | $825.00 |
| Leonard Sullivan | $6,680.00 | | $6,680.00 | $334.00 | $16.70 | $825.00 |
| Mounton & Tarrer, LLC | $7,967.99 | | $7,967.99 | $398.40 | $19.92 | $825.00 |
| Olde World Cast Stone | $45,624.63 | | $45,624.63 | $2,281.23 | $114.06 | $825.00 |
| The North Carolina Granite Co. | $54,461.32 | $47,442.45 | $47,442.45 | $2,372.12 | $118.61 | $825.00 |
| | | | $218,229.01 | $10,911.45 | $545.57 | |

## CERTIFICATE OF SERVICE

I certify that on the date specified herein below I cause to be served a copy of the foregoing documents via first class United States mail in a properly addressed envelope with sufficient postage affixed thereto to ensure delivery upon the parties listed below:

Office of the United States Trustee
362 Richard B. Russell Federal Building
75 Spring Street
Atlanta, Georgia 30303
Attn: Jim Morawetz

This 2nd day of June, 2010.

JONES & WALDEN, LLC

_s/ Leslie M. Pineyro_
Leslie M. Pineyro
Georgia Bar No. 969800
21 Eighth Street, NE
Atlanta, Georgia  30309
(404) 564-9300

Attorneys for Debtor and Debtor in Possession